**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| SUAVE'S TUCKPOINTING CORPORATION, ) <br> an Illinois Corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INTERNATIONAL UNION OF ) <br> BRICKLAYERS AND ALLIED ) <br> CRAFTWORKERS, ADMINISTRATIVE ) <br> DISTRICT COUNCIL 1 OF ILLINOIS, ) <br> ) <br> Defendant. ) | Case No. 13 cv 942 |

**PETITION FOR VACATUR OF ARBITRATION AWARD**

NOW COMES the Plaintiff, SUAVE'S TUCKPOINTING CORPORATION, an Illinois corporation, by and through its attorneys, Tristan & Cervantes, and for its Petition for Vacatur of Arbitration Award, states as follows:

**GENERAL ALLEGATIONS AND BACKGROUND**

1. This actions arises under the laws of the United States and is brought pursuant to the Labor-Management Relations Act of 1947, § 301(a), 29 U.S.C. § 185(a) which grants this Court jurisdiction for the hearing of suits involving the violation of contracts between an employer and a labor organization.

2. Suave's Tuckpointing Corporation ("Suave's") is an Illinois Corporation and is an "employer" as defined by the Labor-Management Relations Act of 1947, 29 U.S.C. § 152.

1

3. The International Union of Bricklayers and Allied Craftworkers (the "Union" or "IUBAC") is a labor organization as defined by the Labor-Management Relations Act of 1947, 29 U.S.C. § 152.

4. The Administrative District Council 1 of Illinois ("District Council") is a unit of the Union located in Elmhurst, Illinois. The District Council is responsible for conducting arbitration hearings on behalf of its members pursuant to collective bargaining agreements with employers.

5. On April 30, 2009, a Memorandum of Understanding was entered into by and between Suave's via a signature by Felipe Razon ("Mr. Razon"), as President of Suave's (not individually), and the District Council. Memorandum of Understanding, Ex. A.

6. Per the terms of the Memorandum of Understanding, Suave's agreed to recognize the District Council as the exclusive collective bargaining agent for all employees performing work pursuant to agreements with certain employer associations. See Ex. A.

7. Additionally, Suave's agreed that the Memorandum of Understanding shall be governed by designated Association Agreements entered into in the future and covering future time periods unless and until terminated in accordance the terms of the Memorandum of Understanding. Memorandum of Understanding, Ex. A.

8. On August 30, 2010, a Memorandum of Agreement was entered into by and between the District Council and certain designated Employer Associations establishing that the Joint Agreement and Working Rules ("Joint Agreement") for the period June 1, 2006 through May 31, 2009 shall be their agreement for June 1, 2010 through May 31, 2013. Memorandum of Agreement, Ex. B.

9. On or about June 1, 2012, Suave's received correspondence from the District Council including a statement of grievance and a notice of hearing date. June 1, 2012 Letter, Ex. C.

10. In the letter dated June 1, 2012, the District Council stated that the Union claimed Suave's violated certain provision of the collective bargaining agreement including Article II (union security), Article IV (bargaining unit and recognition), Article VI (work week, payment of wages, Saturday Reporting, and Sunday Work), Article VII (wages and fringe benefit fund contributions), Article VIII (benefit funds), Article XV (foreman), Article XVI (stewards), and Article XXIV (bonds). June 1, 2012 Letter, Ex. C.

11. On June 6, 2012, the arbitration hearing date was rescheduled to take place on August 1, 2012. June 6, 2012 Letter, Ex. D.

12. On August 1, 2012, an arbitration hearing was held before the Joint Arbitration Board ("JAB"). Report of Arbitration Proceedings, Ex. E.

13. On November 8, 2012, the JAB entered a decision with a finding that Suave's violated Article III, Article IV, Article VI, Article VII, and Article VIII of the Agreement when it allegedly "used at least three ineligible employees to perform work reserved for eligible members of the bargaining unit." JAB Decision at 2, Ex. F.

14. In its decision, the JAB stated that it found the grievance to be timely filed and the award going back to the time the contractor first signed the agreement proper. JAB Decision at 3, Ex. F.

15. The JAB further stated, without basis under law or the collective bargaining agreement, that it "finds that Mr. Felipe Razon is personally bound to the collective bargaining agreement and that for purposes of the collective bargaining agreement, Suave's

Tuckpointing Corp. and Mr. Felipe Razon, personally, are jointly responsible for all obligations and are jointly responsible for all violations by themselves and each other." JAB Decision at 1–2, Ex. F.

16. As a remedy, the JAB ordered Suave's and Mr. Razon, personally, to make payment, among other things, for what it deemed to be damages equivalent to lost contributions, lost hourly dues, and lost wages for the period ranging from May 1, 2009 to July 31, 2012 totaling an excessive amount of $619,964.18. JAB Decision at 3–6, Ex. F.

17. Just prior to the issuance of the JAB Decision, counsel for Funds of the District Council in a separate but related matter provided counsel for Suave's with a copy of results of a complete audit for the period of January 1, 2009 to May 31, 2012 indicating that an amount of $58,422.91 was found due including dues, liquidated damages, and other costs. *See* October 25, 2012 Letter and Audit Report Results, Ex. G.

## COUNT I

### Failure to Adhere to Interpretation and Application of Article X of the Collective Bargaining Agreement in Determining Grievance Was Timely Filed

18. Suave's hereby reincorporates paragraphs 1-17 of this Petition for Vacatur of Arbitration Award as if fully set forth herein.

19. The JAB stepped outside the interpretation and application of the collective bargaining agreement in effect when it found the grievance to be timely despite the fact that it was not filed according to the terms specified in Article X of the Joint Agreement.

20. In reaching an arbitration award, "an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 596, 597 (1960).

21. Citing to Article X, Section 10.1, the JAB found "that the Grievance is timely and that it is proper for us to issue our award going back to the time the Contractor first signed its Agreement." JAB Decision, at 3, Ex. F.

22. According to Section 10.1 of Article X of the Joint Agreement, "[a]ll grievances must be filed within ninety (90) days of the date of the occurrence giving rise to the grievance or of when the party reasonably should have known of the existence of the grievance." Joint Agreement and Working Rules at 29, Ex. H.

23. The initial grievance letter was issued by the District Council on or about September 22, 2011.

24. Based on the evidence presented in the hearing, the IUBAC reasonably should have known of the existence of the basis for the grievance more than 90 days prior to September 22, 2011.

25. The alleged use of at least three ineligible employees to perform work reserved for eligible members of the bargaining unit is said to have occurred in the middle of June 2011.

26. Furthermore, "[g]rievances not raised within the ninety (90) days period shall be deemed waived and not subject to being processed under this procedure." Joint Agreement and Working Rules at 29, Ex. H.

27. IUBAC failed to file the grievance in accordance with the requirements of Article X of the Joint Agreement when it filed the grievance on September 22, 2011 as it was then beyond the ninety day period specified in the Joint Agreement.

28. IUBAC's violation of Article X of the Joint Agreement necessitates the vacatur of the award entered by the JAB against Suave's because to do otherwise is to allow the JAB to

step outside of the confines of the agreed upon terms in effect between the union and the employer and dispense its own brand of industrial justice.

**WHEREFORE**, Plaintiff Suave's Tuckpointing Company respectfully prays that this Court vacate the Arbitration Award contained in the document attached hereto as Exhibit F, absolve Suave's and Mr. Razon from any liability relating to the same, and grant Plaintiff such other and further relief as the Court deems just and proper.

## COUNT II

### Failure of the Arbitrator to Render a Rational Decision as to the entry a Judgment Amount of $619,964.18

18. Suave's hereby reincorporates paragraphs 1-17 of this Petition for Vacatur of Arbitration Award as if fully set forth herein.

19. In its November 8, 2012 decision the JAB rendered a decision, without a rational basis, setting forth a judgment amount of $619,964.18 as against Mr. Razon, individually, and Suave's.

20. Just prior to the November 8, 2013 decision, on October 25, 2012, council for the Funds of the District Council in a separate but related matter provided counsel for Suave's with a copy of results of a complete audit of the time period of January 1, 2009 to May 31, 2012 indicating that it was found that an amount of $58,422.91 was due including dues, benefits, liquidated damages, and other costs and which amount due correlates to extremely less than the amount of wages that the JAB awarded in its decision. *See* October 25, 2012 Letter and Audit Report Results, Ex. G.

21. The audit report was the result of a thorough audit completed by an auditor.

22. Article XXV of the Collective Bargaining Agreement allows such an audit to be completed to determine the amounts that are due. Joint Agreement and Working Rules at 57, Ex. H.

23. Based on the evidence presented in the hearing as to the total amounts of the contracts that Suave's had during the relevant time period, which in no way support a finding of a damages judgment in the amount of $619,964.18 including an excessive amount of wages found to be due, and the results of the audit report, which was completed per the terms of the collective bargaining agreement, that covers all but two months of the period at issue before the JAB and which found that only $58,422.91 in dues and other damages was due which correlates to far less wages having been paid then the finding of the JAB, it is clear that the judgment award entered by the JAB was not rational and that the JAB based its decision on some body of thought, or feeling, or policy, or law that is outside the contract and was clearly an attempt to improperly punish Suave's and Razon.

**WHEREFORE**, Plaintiff Suave's Tuckpointing Company respectfully prays that this Court vacate the Arbitration Award contained in the document attached hereto as Exhibit F, absolve Suave's and Mr. Razon from any liability relating to the same, and grant Plaintiff such other and further relief as the Court deems just and proper.

### COUNT III

**Petition to Vacate November 8, 2012 JAB Decision as To the Entry of a Judgment Amount of $619,964.18 as Being Against Public Policy**

18. Suave's hereby reincorporates paragraphs 1-17 of this Petition for Vacatur of Arbitration Award as if fully set forth herein.

7

19. In its November 8, 2013 decision the JAB rendered a decision, without a rational basis, setting forth a judgment amount of $619,964.18 as against Mr. Razon, individually, and Suave's.

20. Just prior to the November 8, 2013 decision, on October 25, 2012, council for the Funds of the District Council in a separate but related matter provided counsel for Suave's with a copy of results of a complete audit of the time period of January 1, 2009 to May 31, 2012 indicating that it was found that an amount of $58,422.91 was due including dues, benefits, liquidated damages, and other costs and which amount due correlates to extremely less than the amount of wages that that the JAB awarded in its decision. See, October 25, 2012 Letter and Audit Report Results, Ex. G.

21. The audit report was the result of a thorough audit completed by an auditor.

22. Article XXV of the Collective Bargaining Agreement allows such an audit to be completed to determine the amounts that are due. Joint Agreement and Working Rules at 57, Ex. H.

23. Based on the evidence presented in the hearing as to the total amounts of the contracts that Suave's had during the relevant time period, which in no way support a finding of a damages judgment in the amount of $619,964.18 including an excessive amount of wages found to be due, and the results of the audit report, which was completed per the terms of the collective bargaining agreement, that covers all but two months of the period at issue before the JAB and which found that only $58,422.91 in dues and other damages was due which correlates to far less wages having been paid then the finding of the JAB, it is clear that the judgment award entered by the JAB was not rational and that the JAB based its

decision on some body of thought, or feeling, or policy, or law that is outside the contract and was clearly an attempt to improperly punish Suave's and Razon.

24. To allow the decision by the JAB to stand would be against Illinois law and a clear policy of not allowing for punitive damages in a breach of contract claim as it is clear that the entry of the award of $619,964.18 is punitive in nature, not based on any rational calculation, and not based on the essence of the collective bargaining agreement.

**WHEREFORE**, Plaintiff Suave's Tuckpointing Company respectfully prays that this Court vacate the Arbitration Award contained in the document attached hereto as Exhibit F, absolve Suave's and Mr. Razon from any liability relating to the same, and grant Plaintiff such other and further relief as the Court deems just and proper.

## COUNT IV

### Failure to Adhere to Interpretation and Application of the Collective Bargaining Agreement and Failure of the Arbitrator to Render a Rational Decision in Accordance With the Law as To the Entry of a Finding of Personal Liability

18. Suave's hereby reincorporates paragraphs 1-17 of this Petition for Vacatur of Arbitration Award as if fully set forth herein.

19. The award issued by the JAB fails to reflect a finding that derives its basis from the collective bargaining agreement when the Union has failed to provide any evidence establishing that Mr. Razon would be personally bound to the collective bargaining agreement.

20. An arbitrator's finding must in some rational manner be derived from the collective bargaining agreement." *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731,* 990 F.2d 957, 960 (1993). The "award is legitimate only so long as it ***draws its essence*** from the collective bargaining agreement." *Enterprise Wheel*, 363 U.S. at 597 (emphasis

9

added). Furthermore, "[a]n award fails to draw its essence from the collective bargaining agreement 'only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract.'" *T. McGann Plumbing, Inc. v. Chicago Journeymen Plumbers' Local 130, et al*., 522 F.Supp.2d 1009, 1014 (N.D. Ill. 2007) (citation omitted).

21. In its November 8, 2012 decision, the JAB found Mr. Razon personally bound to the collective bargaining agreement and that for purposes of the collective bargaining agreement, Suave's and Mr. Razon were personally, jointly responsible for all obligations and jointly responsible for all violations by themselves and each other.

22. The Memorandum of Understanding signed on April 30, 2009 through which Suave's agreed to be governed by the terms of the Joint Agreement, was entered into by and between Suave's and signed by Mr. Razon as President of Suave's. Suave's was the only party to the Memorandum of Understanding and Mr. Razon was not a party to it as an individual.

23. The Union failed to provide any evidence establishing that Mr. Razon was to be personally bound to the collective bargaining agreement.

24. Further, the collective bargaining agreement includes no provision allowing for the personal liability of Mr. Razon.

25. Under Illinois law, a corporation is a legal entity that exits separate and apart from its officers, shareholders, and directors who are not as a general rule liable for the corporation's debts and obligations.

26. The finding that Mr. Razon is personally liable fails to draw its essence from the collective bargaining agreement because the arbitration award has no basis under the

terms of the agreement between Suave's and the Union. Furthermore, the decision violates Illinois law which, as a general rule, does not allow for personal liability as against the shareholders and officers of a corporation for the debts and obligations of such corporation. As such, one is left with no other conclusion but that the arbitrator must have based the award on some body of thought, or feeling, or policy, or law that is outside the contract and contrary to Illinois law.

**WHEREFORE**, Plaintiff Suave's Tuckpointing Company respectfully prays that this Court vacate the Arbitration Award contained in the document attached hereto as Exhibit F, absolve Suave's and Mr. Razon from any liability relating to the same, and grant Plaintiff such other and further relief as the Court deems just and proper.

Respectfully Submitted,

SUAVE'S TUCKPOINTING CORPORATION

By:  /s/ Pedro Cervantes  
    One of his Attorneys

Pedro Cervantes, IARDC No. 6281150  
**TRISTAN & CERVANTES**  
30 W. Monroe, Suite 630  
Chicago, Illinois 60603  
T: (312) 345-9200  
F: (312) 345-1533

11